UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREI SERGEEV,

                    Petitioner,

            -v-

ORANGE COUNTY JAIL, *et al*.,

                    Respondents.

26-CV-3280 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Petitioner Andrei Sergeev, a native and citizen of Russia, challenges his detention by

U.S. Immigration and Customs Enforcement ("ICE") pursuant to 28 U.S.C. § 2241, seeking an

order directing that he be released from custody or provided a bond hearing.

For the reasons that follow, the Petition is granted.

I.      **Background**

        A.      **Factual Background**

Unless otherwise noted, the following facts are undisputed.  Sergeev, along with his wife,

Olga, and his 17-year-old son entered the United States on February 4, 2023, and applied for

admission at Hidalgo, Texas.  (*See* ECF No. 1 ("Pet.") ¶ 22.)  They were paroled into the United

States for a period of one year, pending removal proceedings under Section 240 of the

Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1229(a).  (*Id.* ¶¶ 22, 24; ECF No. 7

("So Decl.") ¶ 4.)  That same day, Customs and Border Patrol officers served Sergeev with a

Notice to Appear form ("NTA"), which charged Sergeev as inadmissible under 8 U.S.C.

§ 1182(a)(7)(A)(i)(I).  (So Decl. ¶ 5.)  The NTA directed Sergeev to appear before an

immigration judge ("IJ") in New York, New York, on June 2, 2023.  (*Id.*)  On May 23, 2023, ICE

filed a new NTA with the Executive Office for Immigration Review ("EOIR"), which charged

him as inadmissible and removal proceedings commenced.  (*Id.* ¶¶ 6-7.)

1

On June 2, 2023, Sergeev appeared for an initial master calendar hearing in immigration court. The IJ continued the case to September 29, 2023, in order to permit Sergeev to obtain an attorney. (*Id.* ¶ 8.) On August 30, 2023, Sergeev, through counsel, filed written pleadings with the EOIR. In the written pleadings, Sergeev conceded proper service of the NTA, admitted the factual allegations contained in the NTA, and conceded removability as charged in the NTA. (*Id.* ¶ 9.) On the same date, Sergeev filed applications for relief with EOIR, requesting asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* ¶ 10; Pet. ¶ 30.) On September 29, 2023, Sergeev appeared via video teleconference with counsel for a master calendar hearing. (So Decl.¶ 11.) The IJ sustained the charge of removability and designated Russia as the country of removal. The IJ continued the case for an individual merits hearing. (*Id.*) After a series of continuances (*id.* ¶¶ 12, 13), the individual merits hearing was held on August 23, 2024, and the IJ denied Sergeev's applications for relief and issued an Order of Removal for Sergeev to Russia (*id.* ¶ 14). On September 17, 2024, Sergeev filed an appeal of the IJ's decision before the BIA. (*Id.* ¶ 15.)

Shortly after their arrival, Sergeev's spouse, Olga, began exhibiting symptoms of a severe psychotic disorder, including paranoia and unfounded allegations of physical violence against Sergeev. (Pet. ¶ 25.) As a result, Sergeev was charged and arrested twice—once on April 22, 2025 and again on June 5, 2025—based on allegations made by Olga during a psychotic episode. (*Id.* ¶¶ 26-27; So Decl. ¶¶ 16, 19.)

On April 23, 2025, ICE became aware of Sergeev's first arrest, and issued a Form I-205, Warrant of Removal/Deportation, for Sergeev and lodged a Form I-247A, Immigration Detainer–Notice of Action ("I-247A"), with the New York City Police Department. (So Decl. ¶¶ 17, 18.) ICE was not notified, however, of Sergeev's release from custody on the criminal

arrest, and thus he was never held pursuant to that detainer. (*Id.* ¶ 18.) On August 1, 2025, ICE issued a Form I-200, Warrant for Arrest of Alien, ("I-200") for Sergeev. (*Id.* ¶ 20.) Later that day, Sergeev reported to ICE for a scheduled check-in appointment and was arrested pursuant to the I-200. (*Id.* ¶ 21.) Sergeev was transferred to the New York City Hold Room at 26 Federal Plaza, New York, New York, and then to the Orange County Jail at 110 Wells Farm Road in Goshen, New York, where he remains. (*Id.* ¶¶ 21-23.) Subsequently, on September 3, 2025, and October 31, 2025, all charges arising from both criminal incidents were dismissed and sealed, pursuant to New York Criminal Procedure Law § 160.50. (ECF No. 1-4 at 1, 3.)

On January 7, 2026, Sergeev's appeal of the IJ's decision was dismissed by the BIA, and Sergeev filed a petition for review and stay of his removal with the Second Circuit on February 2, 2026 (Pet. ¶¶ 32-33), triggering a forbearance agreement, which effectively precludes Sergeev's removal while his motion for a stay of removal is pending before the Second Circuit.

## B.      Procedural Background

On April 21, 2026, Sergeev filed a habeas petition in this Court pursuant to 28 U.S.C. § 2241. (Pet.) On April 22, 2026, this Court ordered Respondents to show cause for why the Petition should not be granted. (ECF No. 3.) In the interim, the Court ordered that Sergeev not be transferred or removed in light of his interest in participating in further proceedings before this Court. (*Id.*)

On May 1, 2026, Respondents filed its memorandum of law in opposition to the Petition (ECF No. 8 ("Opp.")), along with documents from Sergeev's administrative file (*see* ECF No. 9), and the declaration of ICE Deportation Officer Mincheol So (So Decl.). On May 11, 2026, the Court held a conference at which counsel for the parties appeared. On May 13, 2026, Respondents filed a letter on the docket clarifying their positions regarding Sergeev's detention authority. (ECF No. 10 ("Gov. Let.").)

## II.     Legal Standard

Sergeev brings his Petition pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)).

## III.    Discussion

In the discussion that follows, the Court first considers under which statute Sergeev is currently detained.  The Court then evaluates whether Sergeev's detention complies with Constitutional requirements.  Finally, the Court addresses the appropriate relief due to Sergeev.

### A.     Applicable Statute of Detention

Respondents first argue that ICE may continue detaining Sergeev under 8 U.S.C. § 1231(a)(6) while his Petition for Review remains pending before the Second Circuit, notwithstanding its forbearance agreement with the Second Circuit, which "effectively precludes [Sergeev's] removal while [his] motion for a stay of removal is pending before the Second Circuit." (Opp. at 6.)  The Court need not reach that issue.  As explained further below, Sergeev's initial detention under 8 U.S.C. § 1226(a) violated the Due Process Clause, rendering his detention unlawful from the outset.  Because the detention was unconstitutional from its inception, the Court declines to consider whether changed circumstances—namely, the BIA's dismissal of Sergeev's appeal after more than nine months of detention—could now render that detention lawful.  *See Sanchez Bermudez v. Noem*, No. 26-CV-678, 2026 WL 363523, at *4

4

(E.D.N.Y. Feb. 9, 2026) (granting habeas release when "ICE's detention of [petitioner] was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization").

Moreover, after weeks of arguing that Sergeev's detention is governed by § 1226(c) if not by 8 U.S.C. § 1231(a), Respondents have now changed their position regarding the alternative basis for his detention. Respondents now contend that neither § 1226(a) nor § 1226(c) applies. Instead, Respondents argue that if § 1231(a) does not currently govern, then Sergeev's detention falls under 8 U.S.C. § 1225(b)(2)(A) because he "is an arriving alien." (Gov. Let. at 1.) This distinction is material, as detention is mandatory under § 1225(b)(2), while it is discretionary under § 1226(a).

Section 1225 provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). "A noncitizen detained under Section 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' under 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018)). Parole "into the United States," under § 1182(d)(5)(A), permits a noncitizen to physically enter the country, 8 U.S.C. § 1182(d)(5)(A), subject to a reservation of rights by the Government that it may continue to treat the noncitizen "as if stopped at the border," *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quotation marks omitted). Other than this limited exception, detention under § 1225(b)(2) is considered mandatory. *See, e.g.*, *Gomes*, 804 F. Supp. 3d at 274 (describing detention under § 1225(b)(2) as "mandatory"). Individuals detained under § 1225 are not entitled to a bond hearing. *See*

5

*Jennings*, 583 U.S. at 297 ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

Section 1226 on the other hand, "generally governs the process of arresting and detaining [non-citizens present in the country] pending their removal." *Id.* at 288.  Under § 1226, a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a).  Detention is therefore discretionary, and the noncitizen may be released upon application on either bond or "conditional parole." 8 U.S.C. § 1226(a)(2)(B).  "Critically, under 8 C.F.R. § 1236.1(d)(1), a noncitizen detained under § 1226 may appeal an initial custody determination, including the setting of bond, to an immigration judge." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (internal quotation marks omitted).

Respondents argue for the first time in their most recent letter that because Sergeev presented himself at a port of entry on February 4, 2023, and was subsequently paroled for one year pursuant to 8 U.S.C. § 1182(d)(5)(A), his detention now necessarily falls under § 1225(b)(2)(A) because he may now be treated as if stopped at the border per 8 U.S.C. § 1182(d)(5)(A).  (Gov. Let. at 1.)  To prevail on this argument, Respondents must show that Sergeev was detained when he first entered the United States, and that he was released from that temporary detention under § 1182(d)(5)(A), such that he should still be treated "as if stopped at the border," *Thuraissigiam*, 591 U.S. at 139, and therefore subject to § 1225(b)(2)(A).  But Respondents marshal little evidence that Sergeev was ever detained when he first entered the United States, let alone that he was released from that detention only pursuant to § 1182(d)(5)(A).  On this thin record, Respondents ask the Court to find that practically every noncitizen who ever entered the United States at one point in time could be subject to

6

§ 1225(b)(2)(A) even years after they entered, on the theory that they should be treated as if stopped at the border.  The Court declines that invitation.

Indeed, Respondents' own exhibits demonstrate that upon detaining Sergeev in August 2025, ICE understood his detention to be governed by § 1226 and not § 1225(b)(2)(A) or a revocation of § 1182(d)(5)(A).  *See Islander E. Pipeline Co., LLC v. Connecticut Dep't of Env't Prot.*, 482 F.3d 79, 95 (2d Cir. 2006) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." (quotation marks omitted)).  When ICE arrested Sergeev on August 1, 2025, it cited § 1226 as the sole basis for his detention.  (ECF No. 9-8 (arrest warrant directing Sergeev's arrest by "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA]").)  The "I-200 . . . was directed to immigration officers authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act to serve warrants of arrest for immigration violations."  *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) (quotation marks omitted).  "Crucially, the statutory codification of INA 236 is 8 U.S.C. § 1226."  *Id.*  "Thus, the very arrest warrant provided to [Sergeev] by Respondents . . . indicated that he was being detained under the discretionary detention provision of § 1226."  *Id.* (emphasis omitted).

It is only during this litigation that Respondents now claim that Sergeev is detained under § 1225(b)(2)(A).  In the absence of corroborating records, and indeed, in the face of *contradictory* records, courts in this district have held that unsupported assertions that petitioners are detained under § 1225(b)(2)(A) are insufficient.  *See Yao v. Almodovar*, 813 F. Supp. 3d 461, 468 (S.D.N.Y. 2025) ("ICE attached to its opposition papers the December 2 arrest warrant stating that Yao had been detained under § 1226, without acknowledging that such contradicts its litigation position."); *Lopez Benitez*, 795 F. Supp. 3d at 485 ("Respondents' own exhibits

unequivocally establish that [the petitioner] was detained pursuant to Respondents' discretionary authority under § 1226(a). The warrants for [the petitioner's] respective arrests in 2023 and 2025 explicitly authorized those arrests pursuant to 'section 236 of the Immigration and Nationality Act'—i.e., § 1226."); *Sun v. Almodovar*, No. 25-CV-9262, 2025 WL 3241268, at *2 (S.D.N.Y. Nov. 20, 2025) ("The Court concludes that [the petitioner] is not subject to the mandatory detention provision of section 1225(b)(2)(A). The record demonstrates that . . . he was detained pursuant to a warrant expressly invoking section 1226.").

Respondents concede that, ""[i]f the Court determines that § 1225(b)(2)(A) does not apply, then . . . § 1226(a), not § 1226(c), would apply." (Gov. Let. at 1 n.1.) Having settled that § 1225(b)(2)(A) is inapplicable to Sergeev's detention, the Court concludes that Sergeev is currently detained under § 1226(a).

### B.    Due Process

Because Sergeev's detention is discretionary and not mandatory under § 1226(a), the Court next turns to whether it violates due process. "[T]he Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993) and *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). "It is well established that such protection extends to noncitizens, including those who are in removal proceedings." *Lopez Benitez*, 795 F. Supp. 3d at 492. Section 1226(a) requires that the Government make an individualized determination based on (1) whether the noncitizen is a "danger to property or persons" and (2) whether the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Therefore, although ICE has some discretion in determining whether to detain a noncitizen under § 1226(a), due process "still requires that such

discretion actually be exercised—i.e., that some determination actually be made." *Tumba v. Francis*, 813 F. Supp. 3d 394, 404 (S.D.N.Y. 2025).

Here, "there is nothing to suggest that DHS exercised any discretion *at all* in detaining" Sergeev. *Lopez Benitez*, 795 F. Supp. 3d at 494 (emphasis in original). ICE was required to make an individualized determination before detaining Sergeev under § 1226(a), but there is no evidence that it did so. *Campbell v. Almodovar*, No. 25-CV-09509, 2025 WL 3538351, at *11 (S.D.N.Y. Dec. 10, 2025) ("Detention under 1226(a) must be premised on an individualized custody determination based on the noncitizen's dangerousness and flight risk."). In their opposition, Respondents argue only that "ICE determined from [Sergeev's] criminal history that he was a danger to the community." (Opp. at 21.) However, that dangerousness determination was not made until April 5, 2026—more than eight months after Sergeev's initial detention. (So Decl. ¶ 33.) Due process requires ICE to conduct this individualized assessment before detaining a noncitizen. *See Lopez Benitez*, 795 F. Supp. 3d at 496 (concluding that petitioner was "denied due process when ICE detained him . . . without first conducting an individualized assessment as to his dangerousness or flight risk, or any kind of process at all sufficient to qualify as a valid exercise of discretion"); *Iza By His Next Friend Iza v. Larocco*, No. 25-CV-6915, 2025 WL 3712274, at *4 (E.D.N.Y. Dec. 22, 2025) ("Under Section 1226(a), a DHS officer must make an individualized determination that Mr. Iza is a danger to the community or poses a flight risk *before* detaining him." (emphasis in original)). Thus, ICE's post hoc dangerousness finding cannot cure its failure to provide the required individualized determination at the outset of Sergeev's detention. Because that procedural safeguard was absent, his continued detention violates the due process protections guaranteed under Section 1226(a).

## C.    Appropriate Remedy

Here, Sergeev requests immediate release, or, alternatively, a bond hearing.  (Pet at 20.) As articulated by many courts in this District, "a bond hearing [cannot] retrospectively cure the due process violation, which derived from [Sergeev's] unlawful arrest and detention without the statutorily required exercise of discretion."  *Yao*, 813 F. Supp. 3d at 476-77 (citing *Tumba*, 813 F. Supp. 3d at 404-07); *see also, e.g.*, *Cardenas v. Almodovar*, No. 25-CV-9169, 2025 WL 3215573, at *3 (S.D.N.Y. Nov. 18, 2025) (holding that to accept that only a bond hearing is the proper remedy is "to ignore the gravamen of Petitioner's claim, which is that the Government violated her due process rights by detaining her without exercising any discretion in the first instance.").  In other words, the harm began when Sergeev was detained without process and continues with each day he remains in custody.  Thus, Respondents must release Sergeev from detention.

## IV.    Conclusion

For the foregoing reasons, Sergeev's petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED.  Respondents are hereby ORDERED to immediately release Sergeev from custody and certify compliance with this order by filing an entry on the docket no later than 12:00 p.m. on May 19, 2026.

SO ORDERED.

Dated: May 18, 2026
New York, New York

_____
J. PAUL OETKEN
United States District Judge

10